O’Neall, J.
In the view which we have taken of this case, it will only be necessary to enquire whether the defendant’s testator is liable to contribution on' account of Blake’s decree.
The liability to contribute is the result of a general equity founded on the equality of “burthens and benefits;” Harris v. Ferguson, 2 Bail. 397. To establish the right of contribution, the plaintiff must show that his payment has removed a common burthen from the shoulders of himself and the defendant, and that they are each benefitted by it. This occurs in all cases of payments made by one surety, on the debt for which several are boiind — a common burthen *is removed and a common benefit received. But the doctrine of contribution is not at all founded on contract; it applies to cases where the liability, it is true, arises out of a contract, to which the plaintiff and defendant were parties; it is not, however, necessary that they should be bound by one contract; it may arise out of several, if they have thereby incurred a common liability. So, too, it applies to cases where the liability does not, in any shape, arise out ¿of a contract, as when a common property, held by purchase, descent^ or devise, is liable to the payment of a sum of money, and one is compelled to pay the whole, he shall have contribution from *179 bis co-tenant. In cases where a benefit is derived from the destruction of the property of one for the preservation of another; when there is a community of risk, there may be contribution. But to make out such a claim, the benefit must be shown to have been the necessary and proper consequence of the loss. For if the benefit is uncertain, or the loss was not the means of preservation, there can be no contribution. 1 Eq. Ca. Ab Tit. Con. & Aver. (A) 13.
The right of the complainant to call on the defendant for contribution, depends not upon any act or personal liability of his testator. If he is liable at all, it must be that the land devised to him was liable, as well as that of the complainant, to the lien of Blake’s decree at the time it was enforced and the complainant’s land sold under it. To make out either the community of burthen or benefit, the decree must have had an equal lien on both, and both must have had the benefit of the removal of the lien. —The decree, as a subsisting lien, constitutes the only liability to which the land of either was subject. If that was ended as to one, and not as. to the other, there was no liability on the former, to be removed by the latter. Originally both were affected alike by the general lien. A lapse of near twenty years, and a conveyance of his land by the defendant’s testator, may have changed the operation of that lien, and may have ended the defendant’s liability, while that of the complainant.remained unimpaired. It is necessary, therefore, to enquire whether the land *devised to the defendant’s' testator, was liable to sale under Blake’s decree, at the time the complainant was compelled to pay it? In 1804, the defendant’s.testator sold to Josias W. Alston : his title accompanied by an actual adverse possession, was complete and legal, against the lien of Blake’s decree, after the expiration of five years. M'Rea v. Smith, 2 Bay, 339. In 1809 or,1810, the land was protected from the lien of Blake’s decree, and therefore', as to it, it was and must be considered as then ended. The payment by the complainant was between 1821 and 1832, a period of at least seventeen years after the land devised to the defendant’s testator was exonerated by the operation of the statute of limitations, from the lien of Blake’s decree.
I agree with the complainant’s counsel that the liability of the defendant to contribute, depends upon the question whether Blake could have recovered against him, at the time he did against the complainant. We have seen that the lien of the decree was gone in 1810 ; in 1823, Blake filed his bill to make the complainant’s land liable; Blake could not therefore then have made the land devised to the defendant’s testator liable under the decree. Could he have had any recovery on account of his sale ? If he could ever have recovered any thing on that account, it must have been on the ground that the money received by the defendant’s testator, was to-be regarded as received to the use of the creditor under, the decree. This in equity might have made the defendant a constructive trustee for the creditor. But this constructive trust would not prevent the operation of the statute of limitations; the defendant in such a case holds in his own right and adversely to that of all others. From the time, therefore, that the creditor knew of his sale, the statute commenced to run, and as the claim for the account in Equity is analogous to the action for money had and received at law, it would run, out in four years from that time. In 1806 this fact was not only known to Blake, *180 but is made the ground of exempting that part of the Barony from sale, under the decree then made. In 1810, then, the defendant’s testator would have been protected by the statute of limitation from any recovery on the part of Blake.
*Neither the land nor the defendant’s testator being liable at the time the complainant was compelled to pay the decree, it follows that the complainant has no right to claim a contribution from the defendant, on account of a payment which did not, and could not benefit it.
It may be, and I think it probable, that if the complainant had resisted payment of Blake’s decree, on the ground that by his laches the land of the defendant’s testator was exonerated from its lien, that the complainant would only have been held liable for his aliquot proportion of the debt. For in 3 Coke’s Rep. 14, it is said, “Note reader, when it is said before and often in our own books, that if one purchaser be only extended for the whole debt, that he shall have contribution ; it is not thereby intended, that the others shall give or allow him anything by way of contribution ; but it ought to be intended, that the party who is only extended for the whole, may, by audita querela or scire facias, as the case requires, defeat the execution, and thereby he shall be restored to all the mesne profits, and compel the conusee to sue execution of the whole land. So, in this manner, every one shall be contributory, hoc est, the land of every terre-tenant shall be equally extended. ” In this State, the creditor would, at law, have the right to make his money by &fi. fa. out of any of the land subject to the lien of his judgment. And if the land of one purchaser, heir or devisee was sold, he would have a clear right in equity, to contribution from the others whose land was equally subject to the lien. If the act or laches of the creditor defeats that equity, it would seem that equity ought to prevent him from enforcing his legal advantage, by holding the party only liable to him for so much of the debt as would be properly charged on his land as its proportionate share. In other words, he ought to be protected against the judgment, on paying so much towards it as he would have been in equity liable to contribute, if the land which is exempted by the act or laches of the creditor, had been sold for the payment of the whole debt. Be this however as it may, the complainant, by paying a debt which the defendant’s testator was not in any event liable to.pay, cannot acquire any rights against him.
*It-was contended that the fact that B. S. Screven was the executor as well as the devisee of John Screven, (deceased) and that he was a party to the decrees, made him liable. It appears that in 1807 he terminated his relation of executor to his testator’s estate, by fully accounting for the funds in his hands and removing from the State. Since that time he has not acted as executor, and there is no pretence that he is liable for anything in that character. If he is not liable to account as executor, the fact that he was the executor, cannot have any effect upon him in any other character in which he may be called on for an account.
He was a party to the decree obtained by Blake, and if upon it any action could be sustained against him, it might make him liable. But there is no recovery against him for a debt or demand, nor is there any sum ascertained by the decree, to be in his hands, applicable to its pay *181 ment. The decrees of 1802 and 1806, merely establish the debt against Ms testator’s estate; and in consequence of their legal effect, make the whole of the estate of the testator liable for their payment; no personal liability is thereby cast on the defendant’s testator, and of course, the fact that he was a party, will not deprive him of the defence now relied on.
It is therefore ordered and decreed, that so much of Chancellor Harper’s decree as directs a reference to ascertain whether any, and what contribution, ought to be made by the estate of Benjamin S. Screven; and the decree of Chancellor Johnston, upon the report of the Commissioner, directing contribution to be made by the estate of Benjamin S. Screven, deceased, for the relief of the complainant, be reversed.
Johnson and Harper, Js., concurred.